## UNITED STATES DISTRICT COURT
## IN THE SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

**UNITED STATES OF AMERICA**      §
                                  §
                                  §
**v.**                            §            **Crim. No. CC-08-286-1**
                                  §
**DAVID MUNOZ**                   §
                                  §

## <u>MEMORANDUM OPINION</u>

Defendant David Munoz was charged with one count of possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1). The charges arise from more than 5,000 pounds of marijuana found in the back of an eighteen-wheel tractor-trailer driven by Munoz. After the government presented its case-in-chief, the defendant moved for a judgment of acquittal pursuant to Rule 29(a). FED. R. CRIM. P. 29(a). For the reasons stated on the record and set forth below, the Court GRANTS defendant's motion.

*Evidence Offered*

The government presented only three witnesses in its case-in-chief. Border Patrol Agent Eddie Ray testified that on April 24, 2008, Munoz drove a blue Freightliner truck to the Border Patrol checkpoint located in Falfurrias, Texas, where he was stopped for a routine immigration inspection. Agent Ray testified that he was working in the primary area, through which every vehicle passes. Another officer, Agent Noe Cantu, also worked in the primary area, circling the vehicles with a canine trained to detect narcotics and concealed people.

Ray inquired and Munoz affirmed that he was a U.S. citizen and stated that his trailer contained watermelons. Agent Ray testified that Munoz appeared nervous during their exchange. After Agent Cantu circled Munoz's truck with the canine, he signaled to Ray that the vehicle should be taken to secondary, an area to the side of the checkpoint where vehicles are searched and inspected. Agents Ray and Cantu asked Munoz to drive his vehicle to the secondary area, where he consented to a search of the truck and trailer. When they opened the trailer doors and climbed inside, the agents saw stacks of boxes labeled as watermelons. Some boxes had small slots on the sides, through which Agent Ray could see something that did not appear to be watermelons. When Ray examined the slots, he saw plastic wrapping, which he cut, revealing marijuana. When the agents unloaded the trailer, the marijuana recovered weighed 5,465 pounds. Agent Ray estimated that these narcotics were worth more than four million dollars.

Agent Ray testified that he recovered a bill of lading from the vehicle. It stated the shipper, contents and origin of the truck's shipment. The bill of lading stated that the shipment of watermelons was bound for a Sam's Club in Terrell, Texas. The shipper was listed as Bagley Produce in Edinburg, Texas. The bill of lading was signed by Jesus Duran, designated as the driver of the truck. The registered owner of the tractor and trailer was Rigoberto Soliz. Munoz did not have the commercial driver's license required to drive the truck or a trucker's logbook.

Agent Ray could not say whether the trailer was sealed when Munoz approached the checkpoint. He further testified that he could not smell marijuana

from outside of the truck and that the trailer's exterior appearance was not suspicious.

Border Patrol Agent Noe Cantu testified that he is a trained canine handler and that his canine detects narcotics and concealed human beings. When the dog smells narcotics, his behavior changes and Cantu has taught to perceive this alert. Cantu explained that his dog alerted toward the front left of the trailer. Cantu signaled to Agent Ray to take the vehicle to the secondary area for further inspection. Agent Cantu could not recall whether the trailer was sealed. When the agents opened the trailer, Agent Cantu climbed inside but he could not see the tops of the watermelon bins. Cantu called for assistance from Ray, the taller of the two. Agent Ray climbed into the trailer and once inside he could see into a box. He stated, "It's loaded," meaning that it contained either people or narcotics. The agents then unloaded the trailer, separated the marijuana from the watermelons and bins, and weighed it. Agent Cantu further testified that his canine's sense of smell is very acute and that there was no smell perceptible to the human nose. There was nothing suspicious about the exterior of the truck.

Donald Escamilla, an operations manager for Walmart and Sam's Club, testified that the bill of lading appeared legitimate. He explained that when merchandise arrives at the distribution center in Terrell, Texas, it is unloaded and inspected. If narcotics were discovered in a shipment, employees would call law enforcement. This testimony concluded the government's presentation of its case.

*Discussion*

Rule 29(a) provides that "[a]fter the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." *Id*. A court considering a motion for judgment of acquittal pursuant to Rule 29(a) must consider whether a reasonable jury could conclude that the evidence presented, viewed in the light most favorable to the government, established each element of the offense beyond a reasonable doubt. *U.S. v. Pennington*, 20 F.3d 593, 597 (5th Cir. 1994).

The government had the burden of proving beyond a reasonable doubt the three elements of the offense charged: (1) knowing (2) possession of a controlled substance (3) with intent to distribute. *Id*. The defense disputes the sufficiency of the evidence to prove Munoz's knowledge. A driver's knowledge of a vehicle's contents can sometimes be presumed. *Id.* However, when the contents are concealed, mere control of the vehicle does not prove the driver's knowledge. *Id*.

The government argues that the marijuana was in plain view in the trailer, but the evidence is contrary. As an initial matter, the marijuana was found enclosed within the trailer, not in the passenger area of the tractor. Oddly, the border patrol agents did not record or recall whether the trailer was locked or sealed. The narcotics, therefore, were not visible from outside of the trailer or shown to be accessible to the driver. Furthermore, they were not readily apparent even inside of the trailer until one could look into a box. A photograph of the trailer shows bins labeled as watermelons and apparently containing watermelons.

(Govt. Ex. 8) While a close-up photo demonstrates that by looking into holes in some bins, one might see narcotics, a close inspection would be required. (Govt. Ex. 9) Agent Cantu testified that he could not see into the bins of watermelons even when he climbed into the trailer. The government offered no evidence that Munoz had ever looked into the trailer, much less climbed inside. The Court finds that the narcotics were concealed within the trailer that Munoz drove. Accordingly, the defendant's knowledge cannot be presumed.

The Court finds that the government presented only two pieces of evidence bearing on Munoz's knowledge—the large quantity of drugs found hidden in the trailer and his nervousness. A jury might, in some cases, infer knowledge from the large quantity of drugs, concluding that an ignorant driver would not be trusted with so valuable a shipment. *U.S. v. Del Aguila-Reyes*, 722 F.2d 155, 157 (5th Cir. 1983). The Court finds this evidence standing alone insufficient. *See*, *id.* ("Even this reasonable inference, however, if there were nothing more, might well not support a finding of guilty knowledge."). The government essentially urges the rule that the more drugs found, the less other evidence of knowledge required. The Court declines to so relieve the government of its burden.

The Fifth Circuit has held that "[i]n the absence of facts which suggest that the defendant's nervousness or anxiety derives from an underlying consciousness of criminal behavior, evidence of nervousness is insufficient to support a finding of guilty knowledge." *U.S. v. Diaz-Carreon*, 915 F.2d 951, 954 (5th Cir. 1990). However, the government made no such connection in this case. Nervousness is the weakest of all potential evidence; observation of nervousness is subjective and

the Fifth Circuit has observed that evidence of nervousness is double-edged. *U.S. v. Moreno*, 185 F.3d 465, 472 (5th Cir. 1999) (noting that nervousness or its absence might indicate guilty knowledge). These two pieces of evidence, even taken together, are insufficient to prove Munoz's knowledge beyond a reasonable doubt.

The cases offered by the government and those located by the Court denying acquittal all relied upon stronger evidence of the defendant's guilty knowledge than that presented here. Typical evidence of guilty knowledge includes: inconsistent statements to agents, *U.S. v. Del Aguila-Reyes*, 722 F.2d 155; *U.S. v. Diaz-Carreon*, 915 F.2d 951; *U.S. v. Vasquez-Garcia*, 223 Fed.Appx. 415 (5th Cir. 2007); implausible explanations of the journey, *U.S. v. Del Aguila-Reyes*, 722 F.2d 155; *U.S. v. Diaz-Carreon*, 915 F.2d 951; *U.S. v. Richardson*, 848 F.2d 509, 513 (5th Cir. 1988); obvious alteration to the exterior of the vehicle, *U.S. v. Martinez-Mercado*, 888 F.2d 1484, 1491 (5th Cir. 1994); *U.S. v. Marshall*, 2008 WL 2570733 (5th Cir. 2008); lack of surprise or anger when narcotics are found, *U.S. v. Romero-Reyna*, 867 F.2d 834 (5th Cir. 1989); *U.S. v. Diaz-Carreon*, 915 F.2d 951; *U.S. v. Castillo*, 275 F.3d 46 (5th Cir. 2001); large quantities of cash, *U.S. v. Crooks*, 83 F.3d 103, 106-107 (5th Cir. 1996); substantial unexplained delays en route, *U.S. v. Coleman*, 250 F.3d 738 (5th Cir. 2001); long periods of exclusive control over the vehicle; *U.S. v. Richardson*, 848 F.2d 502; *U.S. v. Resio-Trejo*, 45 F.3d 907, 912 (5th Cir. 1995); and the strong odor of marijuana or scent-masking agents. *U.S. v. Lopez*, 74 F.3d 575 (5th Cir. 1996); *U.S. v. Gomez*, 176 F.3d 479 (5th Cir. 1999).

The government offered no inconsistent statements or implausible stories by the defendant. In fact, the prosecution took pains to exclude Munoz's exculpatory statements. There is no suggestion that Munoz carried a large quantity of cash or a weapon. The government presented no evidence on the history of the shipment, such as when the defendant picked up the trailer, how long it had been in his sole custody or how Munoz came to drive the truck rather than the driver listed on the bill of lading. There is no evidence that law enforcement contacted the shipper of the goods or the owner of the truck. Neither border patrol agent could state whether the trailer was sealed when Munoz approached the checkpoint.

The government argues that Munoz's lack of commercial driver's license and logbook, as well as his failure to be named on the bill of lading constitute substantial evidence of guilty knowledge. However, there is no testimony in the record on standard practice in the trucking industry regarding documentation or substitute drivers. There is no evidence from which a jury could determine what— if anything—to infer on these points. Finally, the government argues that Sam's Club's inspection procedures, detailed by Escamilla, mean that the drugs would have been seized if Munoz completed the trip set out on the bill of lading. They argue that drug dealers would not sacrifice a large quantity of narcotics in this fashion. However, the government does not demonstrate that Munoz or anyone else allegedly involved in the plan knew the procedures, nor that Munoz evidenced any intention to deviate from the route to circumvent detection. These company policies do not demonstrate the defendant's knowledge.

The presumption of innocence "lies at the foundation of the administration of our criminal law." *Coffin v. United States*, 15 S.Ct. 394 (1895). Accordingly, where the evidence "gives even equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence," a judgment of acquittal is appropriate because "a reasonable jury must necessarily entertain a reasonable doubt." *U.S. v. Ramos-Garcia*, 184 F.3d 463 (5th Cir. 1999). The evidence in this case equally supports the innocent explanation that Mr. Munoz, a substitute driver unaware of the truck's illegal contents, grew nervous at the checkpoint because he lacked the necessary commercial driver's license. In similarly equivocal circumstances, the Fifth Circuit has granted acquittal. *Compare U.S. v. Ortega Reyna*, 148 F.3d 540 (5th Cir. 1998) (reversing denial of acquittal where nervousness, hesitations in answering, possession of $700 in cash, all comported with innocent explanation); *U.S. v. Almanzar*, 176 F.3d 479 (5th Cir. 1999) (nervousness, inconsistent statements and lack of identification could be innocent). No reasonable jury could convict on the meager evidence presented.

It is not clear whether this case was inadequately investigated or whether the government failed to present existing evidence in its case-in-chief. However, our system mandates that "the prosecution must establish a prima facie case by its own evidence before the defendant may be put to his defense." Charles A. Wright, FEDERAL PRACTICE AND PROCEDURE §462 (3d ed. 2000). The purpose of rebuttal testimony is strictly "to explain, repel, counteract, or disprove the evidence of the adverse party." *U.S. v. Hall*, 653 F.2d 1002, 1006 (5th Cir. 1981). The rebuttal

case should not and cannot be used as the government's second chance to carry its burden.

The government evidence of the defendant's knowledge is "insufficient to sustain a conviction." FED.R.CIV.P. 29(a). Munoz's Motion for a Judgment of Acquittal pursuant to Rule 29(a) is GRANTED.

So ORDERED this 21st day of July, 2008.

HAYDEN HEAD
CHIEF JUDGE